# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 20-991V
## Filed: August 31, 2022
UNPUBLISHED

| | |
|---|---|
| MUHAMMAD JAFARY,<br><br>                    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Special Master Horner<br><br>Tetanus, diphtheria, acellular<br>pertussis ("Tdap") vaccine; influenza<br>("flu") vaccine; necrotizing myopathy;<br>attorneys' fees and costs; denial;<br>reasonable basis; reconsideration |

*David John Carney, Green & Schafle, LLC, Philadelphia, PA, for petitioner.*
*Matthew Murphy, U.S. Department of Justice, Washington, DC, for respondent.*

### Order Denying Petitioner's Motion for Reconsideration[1]

On August 7, 2020, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10 *et seq*. (the "Vaccine Act"). Petitioner alleged that as a result of receiving an influenza vaccination on December 6, 2017, and a tetanus, diphtheria, acellular pertussis ("Tdap") vaccination on January 23, 2018, he suffered necrotizing myopathy. (ECF No. 1.) The petition was dismissed on August 16, 2021. (ECF Nos. 25, 27.) A motion for attorneys' fees and costs was denied on February 24, 2022, on the basis that petitioner had not demonstrated a reasonable basis for the filing of the petition. (ECF No. 32.)

On March 4, 2022, petitioner moved for reconsideration of the decision denying attorneys' fees and costs. (ECF No. 34.) At the time petitioner filed his motion for reconsideration, he also filed a July 17, 2021 letter from the expert (Dr. Gershwin) that counsel consulted prior to dismissal of this case. (ECF No. 33; Ex. 16.) On March 8, 2022, an order was issued withdrawing the decision denying attorneys' fees and costs

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

so that petitioner's arguments could be considered and ordering respondent to file a response.  (ECF No. 35.)  Respondent filed his response on July 1, 2022 (ECF No. 40) and the motion is now ripe for resolution.

For the reasons discussed below, petitioner's motion is **DENIED**.  Because the decision at issue was withdrawn for purposes of considering petitioner's arguments in favor of reconsideration, it is now "void for all purposes."  (Vaccine Rule 10(e)(3).)  Therefore, "the special master must subsequently enter a superseding decision."  (*Id.*)  However, because the motion for reconsideration is denied, the original, now withdrawn, February 24, 2022 decision denying attorneys' fees and costs will be reissued to serve as a superseding decision pursuant to Vaccine Rule 10(e).

## I.    Legal Standard

Vaccine Rule 10(e), which governs motions for reconsideration, provides, "[e]ither party may file a motion for reconsideration of the special master's decision within 21 days after the issuance of the decision . . . ."  Vaccine Rule 10(e)(1).  Generally "[a] court may grant such a motion when the movant shows '(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice.'"  *System Fuels, Inc. v. United States*, 79 Fed. Cl. 182, 184 (2007) (quoting *Amber Resources Co. v. United States*, 78 Fed. Cl. 508, 514 (2007)).  Granting such relief requires "a showing of extraordinary circumstances."  *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 826, 126 S.Ct. 366, 163 L.Ed.2d 72 (2005).  Special masters have the discretion to grant a motion for reconsideration if to do so would be in the "interest of justice."  Vaccine Rule 10(e)(3).  It has previously been noted, however, that there is little guidance interpreting Vaccine Rule 10(e)(3) beyond the conclusion that it is within the special master's discretion to decide what constitutes the "interest of justice" in a given case.  *See Krakow v. Sec'y of Health & Human Servs.*, No 03-632V, 2010 WL 5572074, at *3 (Fed. Cl. Spec. Mstr. Jan. 10, 2011) (granting reconsideration of motion to dismiss case for failure to prosecute).

Petitioner does not assert that there has been any change in controlling caselaw.  Nor does he contend that previously unavailable evidence is now available.[2]  Rather, petitioner indicates that he relies on the "interest of justice" standard.  (ECF No. 34, p. 1 (citing *Krakow v. Sec'y of Health & Human Servs.*, No. 03-632V, 2010 WL 5572074, at *12 (Fed. Cl. Spec. Mstr. Jan. 10, 2011)).)[3]  In the decision cited by petitioner, the special master concluded that "the 'interest of justice' standard is likely less onerous than 'manifest injustice.'"  *Krakow*, 2010 WL 5572074, at *5.  Nonetheless, "a motion for reconsideration should not be used to gain a second opportunity to argue what was

[2] Petitioner's motion is accompanied by a previously unfiled letter by his expert, Dr. Gershwin, but that letter is dated July 17, 2021 (ECF No. 33; Ex. 16).

[3] The specific page citation included in petitioner's motion appears to be incorrect as the Westlaw pagination spans only from *1-9.

already decided." *Chuisano v. Sec'y of Health & Human Servs.*, No. 07-452V, 2013 WL 6234660, at *20 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (citing *Fillmore Equipment of Holland, Inc. v. United States*, 105 Fed. Cl. 1, 9 (2012)).  A party seeking reconsideration "must support the motion by a showing of extraordinary circumstances which justify relief."  *Fru–Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999).  The motion for reconsideration "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'"  *Prati v. United States*, 82 Fed. Cl. 373, 376 (2008) (quoting *Fru–Con Constr. Corp.*, 44 Fed. Cl. at 300).

## II.    The Decision at Issue on This Motion

In order to understand petitioner's specific arguments for reconsideration, a brief summary of the decision at issue is necessary.  The petition had alleged post-vaccinal necrotizing myopathy evidenced by onset of certain symptoms, most notably fatigue and muscle weakness, occurring in mid-February of 2018. (ECF No. 1, p. 2.)  (That would be approximately 10 weeks from the date of the December 2017 flu vaccination and three weeks from the date of the January 2018 Tdap vaccination.)  As noted above, the now withdrawn decision denying attorneys' fees and costs (previously at ECF No. 32) concluded that petitioner did not have a reasonable basis to file this petition.

With respect to the parties' positions, the decision explained that petitioner's motion for attorneys' fees and costs had stated that "[o]nce the medical literature was reviewed in detail by Petitioner's counsel in July 2021 and after a phone call with Petitioner's expert in late July, Petitioner's counsel came to the conclusion that this case could no longer be supported through an expert report."  (ECF No. 32, p. 4 (quoting ECF No. 29, p. 8).)  Petitioner asserted in effect that this was the point at which reasonable basis had been lost.  (*Id.*)  This was the sole argument advanced in the motion for attorneys' fees and costs to explain why the petition was filed with a reasonable basis.

However, petitioner's prior motion to dismiss had indicated that petitioner's counsel had a prior case involving the same injury (necrotizing myopathy) that had settled.  (*Id.* at 3 (citing ECF No. 24, p. 4).)  Petitioner's motion to dismiss had also asserted that petitioner's medical records "reasonably demonstrated a causal link" between petitioner's vaccinations and his necrotizing myopathy.  (*Id.* at 8 (quoting ECF No. 24, p. 4).)  The decision regarding attorneys' fees and costs also considered these points.  This was the full extent of any argument petitioner had presented in any filing, apart from the allegations of the petition itself, that speak to reasonable basis.  Respondent filed an opposition to petitioner's motion arguing that petitioner did not have a reasonable basis to file the petition; however, petitioner filed no reply addressing respondent's contentions.

In addressing the question of reasonable basis, the decision stressed that the fact that petitioner had been unable to furnish any expert opinion to support the claim is not dispositive because an express medical opinion is not required to demonstrate a

reasonable basis.  Based on petitioner's broader filings, the decision indicated that "petitioner here seems to rely on a purported temporal relationship between petitioner's vaccinations and injury as well as a history of settlement of cases involving the same vaccination and injury.  This is not persuasive in the context of this case."  (*Id*. at 6.)  Several points contributing to this conclusion were discussed.

In discussing the legal standard for assessing reasonable basis, the decision explained that temporal proximity alone is insufficient to establish reasonable basis for a cause-in-fact case.  (*Id*. at 5-6.)  In that regard, it was noted that petitioner's medical records contained conflicting evidence regarding the onset of his symptoms, some of which supported petitioner's contention as to onset.  However, despite that possible temporality, none of petitioner's treating physicians had opined that petitioner's condition was caused by his vaccinations, including within medical records generated after petitioner had commenced treatment on the basis that he was suffering an autoimmune condition.  (*Id*. at 7.)  (Of note, nothing in the record had indicated what would constitute a *medically appropriate* temporal relationship under the relevant standard for assessing causation-in-fact, so the significance of the onset urged by petitioner was not self-evident.)

It was further noted that petitioner's own filings confirmed that petitioner had consulted an expert who could not causally relate the facts of the case to vaccination based on the relevant literature.  (*Id*. at 8.)  The decision acknowledged that reasonable basis may dissipate as a case progresses as petitioner had seemingly suggested, but explained that because petitioner's counsel had not explained why the expert could not opine, there was no evidence in the record to assess petitioner's assertion.  The decision explained that "[i]n fact, petitioner's counsel has not disclosed what facts prevented petitioner's expert from opining and nothing in any of petitioner's filings suggests that the critical facts were unknown at the time the petition was filed."  (*Id*.)

Turning to petitioner's reference to prior settlements, the decision indicated that it is possible for a history of settlement to have some significance; however, "the fact that other cases involving the same injury have previously settled cannot suffice to demonstrate more than a mere scintilla of evidence of causation where the specific facts of this case have evidently been fatal to any proposed medical opinion supporting causation."  (*Id*. at 9.)  It was noted, for example, that Guillain-Barre syndrome ("GBS") is commonly compensated in this program, but that does not mean that every GBS allegation has a reasonable basis on its facts.

The decision concluded by noting that "[b]ased on all of the above, there is not more than a mere scintilla of evidence supporting vaccine causation on this record."  (*Id*. at 9.)

III.    **Party Contentions**

Petitioner's arguments in favor of reconsideration can be divided into two categories: First, petitioner advances arguments regarding policies and procedures that

4

favor awards of attorneys' fees and costs.  These arguments seek to suggest that reconsideration would be in the interest of justice broadly.  Second, petitioner raises arguments disputing specific aspects of the analysis contained in the decision denying attorneys' fees and costs.  These arguments contend there are errors of law or mistakes of fact to be corrected.

Regarding the first category, petitioner charges that:

- "Petitioners' attorneys' sole source of fees is an award through the National Vaccine Injury Compensation Program" (ECF No. 34, pp. 3-4); and

- "Special Master Horner['s] decision denying Petitioner's Attorneys' Fees and Costs is chilling and against the purpose of the Vaccine Injury Compensation Program."  (*Id*. at 20-23.)

Regarding the second category, petitioner contends that under a totality of the circumstances test an award of attorneys' fees and costs should be viewed as appropriate.  (*Id*. at 4-9.)  Specifically, petitioner charges that:

- "Special Master Horner erroneously found it controlling that none of Mr. Jafary's medical providers associated his injury with his vaccinations" (*Id*. at 9); and

- "There is objective circumstantial evidence that Petitioner's necrotizing myopathy began within six weeks of vaccination" (*Id*. at 9-11); and

- "Special Master Horner failed to appropriately consider Mr. Jafary's affidavit testimony about his health and onset of fatigue, which the contemporaneous medical records corroborate" (*Id*. at 11-15); and

- "Petitioner's counsel is not required to detail all the reasons why his expert could not render a supportive expert opinion" (*Id*. at 15-18); and

- "Petitioner's counsel had previously filed and successfully settled a vaccine-caused necrotizing myopathy case."  (*Id*. at 18-19.)

Accompanying petitioner's motion is a letter by Dr. Gershwin, an immunologist and rheumatologist.  (ECF No. 33-1; Ex. 16.)  In the letter, Dr. Gershwin indicates that necrotizing myopathy is an immune mediated condition and that the relevant mechanisms of action allow for an inference of vaccine causation for up to six weeks post-vaccination.  (*Id*.)  In this case, however, Dr. Gershwin indicates that the updated medical records from February of 2021 were "helpful" in documenting a mixed connective tissue disorder and scleroderma in addition to necrotizing myopathy.  (*Id*. at 1.)  Dr. Gershwin concluded that he could not distinguish necrotizing myopathy as a standalone condition.  (*Id*. at 1-2.)  He indicated that he was willing to offer a report

addressing general causation of necrotizing myopathy, but could not write a supportive report for the case due to the "excessively complicated" diagnostic issue that is present. (*Id*. at 2.)  Dr. Gershwin added that "I would not have expected you [referring to petitioner's counsel] to have spotted these complex medical issues in your investigation of this case." (*Id*.)

In response, respondent contends that petitioner has not demonstrated that reconsideration is in the interest of justice.  (ECF No. 40, p. 3.)  Respondent stresses that petitioner was put on notice regarding the reasonable basis issue in this case by respondent's response to the motion for fees and costs.  Yet, petitioner filed no reply. To the extent petitioner believes Dr. Gershwin's letter supported reasonable basis, it should have been filed as part of petitioner's case in chief.  (*Id*. (citing *Goodgame v. Sec'y of Health & Human Servs*., 157 Fed Cl. 62 (2021)).)  In any event, respondent contends that Dr. Gershwin's letter (which confirms he was unable to opine in this case) actually undermines rather than supports petitioner's assertion of a reasonable basis. (*Id*. at 4.)  Respondent notes that when counsel files a case without investigating the underlying science and medicine, counsel runs the risk of being unable to establish a reasonable basis for the filing of the petition.  (*Id*.)

Respondent also contends that denying the motion for reconsideration would result in no manifest injustice.  (*Id*. at 5.)  Respondent suggests that "[p]etitioner's motion demonstrates that he is seeking reconsideration simply because he disagrees with the Special Master's discretionary denial of attorneys' fees and costs in this case . . . .  However, petitioner has not identified any evidence in the record that the Special Master failed to consider that would result in a determination that he had a reasonable basis for filing his claim."  (*Id*.)  Additionally, respondent disputes the specific contentions petitioner has raised with respect to the analysis contained in the decision, suggesting petitioner has misapprehended the analysis, and further contends that the decision applied the correct legal standard for assessing reasonable basis.  (*Id*. at 5-13.)  Respondent also notes that petitioner cites the same controlling caselaw that is discussed in the decision, but merely "argues for a different application of the law to the facts of this case in order to achieve a different, more favorable result."  (*Id*. at 8.)

Petitioner filed no reply.

## IV.    Petitioner Has Not Demonstrated Any Basis for Reconsideration

### a.  The interests of justice do not favor reconsideration

Petitioner is correct that the purpose of the unusually generous fee shifting regime included in the Vaccine Act is to ensure that petitioners with difficult cases have access to counsel.  Petitioner is unpersuasive, however, in contending that the decision reached in this case is contrary to that purpose or would have any chilling effect on future cases.  While petitioner stresses broader policy considerations, he ignores the specific procedural history of this case.  The key issue here is petitioner's failure to meaningfully participate in the motion practice leading to the complained of decision.

As part of his motion for attorneys' fees and costs, petitioner's counsel stressed his extensive prior experience in this program.  (ECF No. 29, p. 5 (noting counsel has handled 125 prior vaccine cases).)  Moreover, his motion demonstrates at least broadly his familiarity with the standards for awarding attorneys' fees and his awareness of the concept of reasonable basis specifically.  Accordingly, petitioner's counsel knows, or surely should have known, that petitioner bore the burden of demonstrating a reasonable basis as a threshold issue, a point that involves an objective inquiry based on the record evidence and is unrelated to counsel's conduct.  Despite this, petitioner's discussion of reasonable basis within his motion for attorneys' fees and costs was limited to the following conclusory passage relating primarily to counsel's own conduct:

> . . . Mr. Carney retained an expert rheumatologist/immunologist to review the file and analyze whether the flu and/or Tdap vaccines could have and did cause Petitioner's necrotizing myopathy.  Therefore, Petitioner's counsel and his expert were required to expend resources on analyzing the injury in relation to Petitioner's medical history.  Petitioner's counsel and his expert attempted to support this case, however, were unable to do so.

> Once the medical literature was reviewed in detail by Petitioner's counsel in July 2021 and after a phone call with Petitioner's expert in late July, Petitioner's counsel came to the conclusion that this case could no longer be supported through an expert report . . . . At no time did Petitioner's counsel advance this case beyond what would be considered reasonable basis . . . .

(ECF No. 29, p. 8.)

Even if petitioner's *initial* conclusory treatment of the reasonable basis question could be excused by the fact that reasonable basis was not specifically raised as an issue prior to dismissal, respondent filed a response subsequent to this assertion that included a detailed argument as to why respondent contends this case lacked a reasonable basis.  (ECF No. 31, pp. 4-10.)  Petitioner filed no reply responding to that argument.  In fact, the decision denying an award of attorneys' fees and costs scrubbed the docket of this case to confirm whether any representations by petitioner in prior filings could possibly be responsive to respondent's argument just to be able to discuss intelligibly petitioner's implicit position that reasonable basis did exist for the filing of the petition.  (ECF No. 32, pp. 3-4 (drawing upon petitioner's motion to dismiss and petition for relevant representations).)

Policies favoring awards of attorneys' fees and costs are predicated on petitioners and their counsel availing themselves of the process for determining what, if any, attorneys' fees and costs were reasonably incurred.  Given the procedural history at issue in this case, it is highly unlikely other counsel will draw the chilling lesson petitioner fears even if they disagree with the ultimate conclusion reached.  Moreover, petitioner has not even acknowledged his failure to reply and present his arguments

while the motion was initially pending, let alone attempt to establish any basis for excusing this neglect.  Motions for reconsideration are not intended to be used as a mere mulligan.

Petitioner had a full and fair opportunity to address reasonable basis in the first instance and counsel's actions in this case (presenting substantive arguments for the first time upon reconsideration) are particularly frustrating to judicial economy.  Petitioner's failure to support his motion in the first instance is not the type of extraordinary circumstance that warrants reconsideration.  Rather, the instant motion is the very exemplar of an "unhappy litigant [seeking] an additional chance to sway the court."  *Prati*, 82 Fed. Cl. at 376.

### b.  Petitioner has not demonstrated any error of law or mistake of fact

Even if the circumstances were more favorable to reconsideration procedurally, petitioner also has not identified any error in the undersigned's discussion of the legal standard for assessing reasonable basis.  Petitioner urges application of the Federal Circuit holdings in *James-Cornelius* and *Cottingham* and further stresses that reasonable basis should be based on the totality of the circumstances.  (ECF No. 34, p. 8 (citing *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337 (Fed. Cir. 2020) and *James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374 (Fed. Cir. 2021)).)  Petitioner argues that "reasonable basis looks not to the likelihood of success, but more to the feasibility of the claim" and is established with "more than a mere scintilla of evidence."  (*Id*. at 4, 7.)  However, this is precisely the legal standard articulated by the decision at issue.  (ECF No. 32, p. 5.)

Nonetheless, petitioner argues that the fee decision failed to apply the totality of the circumstances test for reasonable basis because the decision "found it controlling" that none of petitioner's medical providers associated his injuries with his vaccination.  (ECF No. 34, p. 9.)  Petitioner quotes the Federal Circuit holding in *James-Cornelius* for the proposition that the "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has a reasonable basis."  (*Id*. (quoting 984 F.3d at 1379).)  Unacknowledged by petitioner, however, is the fact that the complained of analysis incorporates this exact quotation.  (ECF No. 32, p. 6.)  Contrary to petitioner's bare assertion, nothing in the analysis treats the lack of either treating physician or expert opinions as singularly dispositive.  However, as petitioner notes in his motion for reconsideration, the totality of the circumstances test does include consideration of the factual and medical support for the petition.  (ECF No. 34, p. 6 (quoting *Chuisano v. United States*, 116 Fed Cl. 276, 288 (2014)).)  Here, that medical support was entirely absent vis-à-vis any causal link to vaccination, which is what is explained in the decision.

In the motion for reconsideration, petitioner correctly cites the Federal Circuit in *Cottingham* for the proposition that medical records may provide "circumstantial evidence *of causation*" (ECF No. 34, p. 9 (emphasis added) (quoting 971 F.3d at 1346)), but when turning to the facts of this case attempts to shift his burden by

suggesting that the records need only supply circumstantial evidence that petitioner was even suffering the condition at issue.  Specifically, he argues that reasonable basis existed because "[t]here is objective circumstantial evidence in the medical records that Mr. Jafary's necrotizing myopathy symptoms of fatigue and weakness began within six weeks of vaccination." (*Id.*)  According to petitioner this constitutes "circumstantial evidence of a colorable vaccine injury claim." (*Id.* at 10.)  However, petitioner is not correct to equate the type of circumstantial evidence available in either *Cottingham* or *James-Cornelius* to the mere presence of symptoms following vaccination.  For example, the decision denying attorneys' fees and costs explained that the medical records in *James-Cornelius* included a notation by a physician questioning whether there was vaccine-causation as well as evidence of challenge-rechallenge.  The record evidence in *James-Cornelius* also included medical articles addressing vaccine-causation and a vaccine package insert that could be cross-referenced to the petitioner's symptoms as reflected in the medical records.  (ECF No. 32, n.4 (discussing 984 F.3d at 1380).)  In *Cottingham*, the Federal Circuit likewise explained that the symptoms reflected in her medical records could be cross referenced against adverse reactions documented in the vaccine package insert.  971 F.3d at 1346-47.  Thus, both *Cottingham* and *James-Cornelius* had evidence to suggest causality that went beyond mere temporality of symptoms.  Prior to the belated filing of Dr. Gershwin's letter, the record of this case contained nothing remotely comparable to any of this.

The remainder of petitioner's argument is largely devoted to reasons why petitioner believes his preferred evidence of onset (and thereby evidence of a temporal relationship between petitioner's vaccination and his alleged necrotizing myopathy) was not fully credited.[4]  (ECF No. 34, pp. 9-15.)  However, this misreads the decision.  The decision does indicate that "there is conflicting evidence in the medical records regarding onset of the relevant symptoms" (ECF No. 32, p. 6-7), but petitioner fails to appreciate that he was given the benefit of temporal proximity being credited arguendo in the final analysis.  Specifically, the decision concluded in relevant part: "In sum, petitioner has offered medical records with some conflicting evidence suggestive of a *possible* temporal relationship between onset of his symptoms and vaccinations.  However, no medical opinion is available within the medical records to endorse any causal significance to that purported temporal relationship based on the available facts." (ECF No. 32, p. 9 (emphasis in original).)

Petitioner stresses language from the Fourth Circuit acknowledging that the relevant standard is "easy to recite, but harder to apply." (ECF No. 34, p. 7 (citing *Sedar v. Reston Town Ctr. Prop.*, 988 F.3d 756, 761, n.3 (4th Cir. 2021) (citations omitted)))).  And, indeed, the decision at issue is discretionary and fact intensive.  The substantive arguments belatedly included in petitioner's motion for reconsideration

---

[4] One additional point warrants explanation.  Petitioner suggests that discussion in the decision regarding Raynaud's phenomenon implies a misunderstanding of the condition at issue because Raynaud's phenomenon is not a symptom of necrotizing myopathy.  (ECF No. 34, pp. 10-11.)  Petitioner cites a website from the Myositis Foundation to demonstrate that Raynaud's phenomenon is not specifically listed as a symptom of necrotizing myopathy.  (*Id.* at 9-10.)  However, Raynaud's was specifically included by Dr. Mecoli as part of petitioner's own diagnosis of necrotizing myositis with scleroderma features.  (Ex. 6, p. 8.)

could conceivably have allowed for a more detailed discussion of reasonable basis if they had been presented *prior to* issuance of the decision.  As it stands, however, petitioner is not persuasive in suggesting that any error of law or mistake of fact justifies the relief of reconsideration.

### c.  Dr. Gershwin's letter is not ultimately helpful

Finally, petitioner's belated filing of a letter by Dr. Gershwin does not change the calculus.  The Court of Federal Claims has held that evidence not submitted during the merits phase of litigation can be properly excluded from consideration of whether a reasonable basis exists to support attorneys' fees and costs.  *Goodgame v. Sec'y of Health & Human Servs.*, 157 Fed. Cl. 62 (2021); *see also Contreras v. Sec'y of Health & Human Servs.*, No. 19-491V, 2022 WL 2302208 (Fed. Cl. Spec. Mstr. May 31, 2022). Moreover, in the reconsideration context consideration of additional evidence is limited to evidence that was not previously available.  *See*, *e.g.*, *Cozart v. Sec'y of Health & Human Servs.*, No. 00-590V, 2015 WL 6746499, at *4 (Fed. Cl. Spec. Mstr. Oct. 15, 2015) ("The additional evidence that petitioners presented is not new evidence; rather, it is an article that was available to petitioners at the time this case went to hearing.  The argument that petitioners did not deem this article relevant until the undersigned issued her decision is not proper grounds for reconsideration of the undersigned's decision."). In all events, Vaccine Rule 8(b)(1) requires that that all evidence be considered in "fundamental fairness to *both parties*" (emphasis added).

Given that Dr. Gershwin's letter is dated July 17, 2021, petitioner clearly had the wherewithal to introduce the letter into evidence during the merits phase or, at the very least, in connection with his original attorneys' fees motion and/or any reply.  Contrary to petitioner's implicit protest, it is not unusual for petitioners to provide such letters to support reasonable basis.  *See*, *e.g.*, *Middleton v. Sec'y of Health & Human Servs.*, No. 17-1910V, 2020 WL 6266699 (Fed. Cl. Spec. Mstr. Jan. 6, 2020) (finding reasonable basis where petitioner filed, inter alia, a letter from an expert documenting her interactions with the expert prior to filing the petition), mot. rev. denied 149 Fed. Cl. 211 (2020); *Weggen v. Sec'y of Health & Human Servs.*, No. 15-1338V, 2016 WL 6576568, at *6-7 (Fed. Cl. Spec. Mstr. Oct. 13, 2016) (finding that petitioner's email exchange with an expert who provided the possible theory that petitioner's vaccination "could have been responsible" for the later injury was sufficient in meeting the feasibility standard for reasonable basis); *Bates v. Sec'y of Health & Human Servs.*, No. 13-154V, 2016 WL 6634924, at *7, 13 (considering a treating physician's handwritten response to a letter petitioner's counsel stating that he referred petitioner to a neurologist "who specializes in vaccine related problems" to determine whether petitioner had reasonable basis).

This case is particularly unsympathetic given that counsel obtained this letter prior to dismissing the case and then subsequently sought to affirmatively, but rather cryptically, rely on his underlying interaction with Dr. Gershwin to support his reasonable basis contention without filing the resulting letter.  In fact, Dr. Gershwin's letter itself put petitioner on notice regarding the complexity of the medical issues.  In the letter, Dr. Gershwin stated, "Given my nearly 50 year experience in autoimmunity, I would not

have expected you to have spotted these complex medical issues in your investigation of this case."  (Ex. 16, p. 2.)  Thus, based on his interaction with Dr. Gershwin, petitioner's counsel clearly understood prior to applying for attorneys' fees and costs that there was a complicated medical issue in play that would require more than a bare assertion that reasonable basis existed.

Petitioner charges that the decision denying fees and costs impermissibly required petitioner to detail conversations between attorney and expert and "provide[d] no legal support for holding that Petitioner is required to detail the reasons that his expert could not supply a supportive opinion to meeting [sic] the burden of proof."  (ECF No. 34, p. 15.)  However, the decision included no such holding.  The passage petitioner objects to was occasioned by petitioner's specific assertion in his motion to dismiss and in his motion for attorneys' fees and costs that a discussion between counsel and Dr. Gershwin represented the point at which reasonable basis dissipated.  The decision did not require further detail regarding those discussions.  Rather, the decision explained why, given the complete paucity of supporting argumentation or evidence, mere reference to those discussions did not provide evidence that reasonable basis had existed in the first place.  Dr. Gershwin's letter, even if considered, would not on balance remedy that issue.

Dr. Gershwin's letter potentially aids petitioner on the reasonable basis inquiry in two ways.  First, he expresses a willingness to opine regarding general causation and explains that the medically acceptable timeframe to infer vaccine-causation of necrotizing myopathy is up to six weeks post-vaccination.  (Ex. 16, p. 1.)  Coupled with the medical record evidence suggesting that onset of certain symptoms was in that timeframe, this could arguably support a finding that petitioner had more than a mere scintilla of evidence to support vaccine causation.  Second, Dr. Gershwin suggests that it was following review of medical records generated in February of 2021 that he ultimately concluded he would not opine in this case.  (*Id*.)  Because this case was initially filed on August 7, 2020, that representation could have bearing on petitioner's assertion that the petition did initially have a reasonable basis that later dissipated.  However, although the letter is potentially helpful in some respects, respondent is correct to note that it does not fully support petitioner's contentions.  In fact, it reveals significant points to be in tension, complicating rather than resolving the questions at issue.  Thus, even if I were inclined to consider it, Dr. Gershwin's letter would not necessarily alter the outcome.

Petitioner argues that onset of necrotizing myopathy (evidenced by fatigue and muscle weakness) within six weeks of vaccination supports a reasonable basis for a claim of vaccine-caused necrotizing myopathy.  (ECF No. 34, pp. 2-3.)  Dr. Gershwin's letter represents the first submission of any evidence to support that assertion.  (Ex. 16.)  However, this new evidence simultaneously suggests that petitioner may actually never have had necrotizing myopathy as a standalone condition.  (*Id*.)  Given that fatigue and muscle weakness are not specific to necrotizing myopathy, this raises entirely new reasons to question whether the onset of symptoms described in the medical records actually evidence the causal link that petitioner has urged.  That is, while Dr. Gershwin's

letter supports the causal significance of a six-week latency to symptom onset for necrotizing myopathy, his letter also dramatically undercuts any claim that his own symptoms can be parsed diagnostically in the way petitioner had hoped.

In that same vein, Dr. Gershwin's letter also complicates petitioner's claim that reasonable basis dissipated post-petition.  The letter does bolster petitioner's argument to the extent Dr. Gershwin specifically cited to records generated in February of 2021 as "helpful" to his ultimate decision not to opine.  (Ex. 16, p. 1.)  He also confirms, however, that the specific issue preventing him from opining is that petitioner has overlap syndromes of mixed connective tissue disease and scleroderma.  (*Id*.)  The decision denying attorneys' fees and costs explained that the medical records documented petitioner as having both mixed connective tissue disease and scleroderma as early as December of 2018.  (ECF No. 32, p. 7 (citing Ex. 5, p. 189).)  In fact, the decision notes that Dr. Mecoli expressed in July of 2019 that petitioner did not fit neatly into available diagnostic criteria and more likely had an overlap syndrome.  (*Id*. (citing Ex. 6, p. 8).)  Specifically, Dr. Mecoli opined that "an overlap construct fits best." (Ex. 6, p. 8.)  These were among the records initially filed with the petition.  Accordingly, even taking Dr. Gershwin's letter into account, it remains far from clear that the ultimate timing of counsel's and Dr. Gershwin's conclusion was dictated by the collection of the updated medical records.[5]  As noted in the decision denying fees and costs, "counsel's subjective realization that the case cannot move forward is not the relevant factor" in determining whether a case has lost its reasonable basis.  (ECF No. 32, p. 8 (citing *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017)).)

Further to this, Dr. Gershwin's letter calls into question counsel's reliance on his own prior experience as supporting reasonable basis for the initial filing of this case.  Specifically, in both the motion to dismiss and in his motion for reconsideration, petitioner cites to counsel's prior case of *Marra v. Sec'y of Health & Human Servs.*, 15-261V, which is a necrotizing myopathy case that resolved via settlement in 2018. (ECF No. 24, p. 4; ECF No. 34, p. 19.)  Petitioner suggests that "HHS is certainly not in the habit or practice of settling by stipulation meritless injuries that do not have some medical record support." (ECF No. 34, n. 2.)  *Marra*, as well as the other prior necrotizing myopathy cases that have settled, involved the flu vaccine, a point noted in the decision denying attorneys' fees and costs.  (ECF No. 32, p. 8.)  However, Dr. Gershwin's letter confirms, based on his explanation as to the parameters of general causation (i.e. that the mechanisms of action typically invoked involve a latency of up to six weeks), that any potential causal opinion for this case would have encompassed only petitioner's January 2018 Tdap vaccination and not his earlier December 2017 flu vaccination given petitioner's alleged mid-February 2018 onset. (Ex. 16.)  Evidence relating a specific vaccination to an injury is not necessarily broadly applicable.  Thus, the factors that led to resolution of *Marra* and other prior settlements involving the flu

---

[5] Dr. Gershwin's invoice reflects that he reviewed all of the medical records at one time, including the later filed records, on July 8, 9, and 10, 2021. (ECF No. 29, p. 45.)  Petitioner's motion for fees and costs also characterized counsel's own detailed review of medical literature, which he notes did not occur until July of 2021, as ultimately informing the decision to dismiss.  (ECF No. 29, p. 8.)  However, that literature has never been filed and counsel did not explain why he waited until July of 2021 to conduct any review of literature.

vaccine are further attenuated from the reality of this case than what is already discussed in the decision denying attorneys' fees and costs.  In this case, Dr. Gershwin's expressed willingness to opine on general causation references vaccinations generically but does not explicitly invoke the Tdap vaccine or offer any indication of how the Tdap vaccine specifically could be causally implicated.  (Ex. 16., p. 2.) Obviously, petitioner's counsel would have been aware of this important distinction at the time he filed this petition.

In sum, the procedural posture of this case counsels against accepting Dr. Gershwin's letter into evidence.  Moreover, based on the substance of the letter, its exclusion is not likely to be prejudicial.  On the whole, and especially given the procedural posture of this case, Dr. Gershwin's letter does not support reconsideration and should also not be belatedly accepted as evidence supporting petitioner's request for attorneys' fees and costs.

## V.    Conclusion

In light of all of the above, petitioner's motion is **DENIED**.  Because the decision at issue was withdrawn for purposes of considering petitioner's arguments in favor of reconsideration, the original, now withdrawn, February 24, 2022 decision denying attorneys' fees and costs will be reissued as a superseding decision pursuant to Vaccine Rule 10(e).

**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master