# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-991V
**Filed: August 31, 2022**
UNPUBLISHED

| | |
|---|---|
| MUHAMMAD JAFARY,<br><br>                     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                     Respondent. | Special Master Horner<br><br>Tetanus, diphtheria, acellular pertussis ("Tdap") vaccine; influenza ("flu") vaccine; necrotizing myopathy; attorney's fees and costs; denial; reasonable basis; onset |

*David John Carney*, Green & Schafle, LLC, Philadelphia, PA, for petitioner.
*Matthew Murphy*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION DENYING ATTORNEYS' FEES AND COSTS[1,2]

On August 7, 2020, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10 *et seq*. (the "Vaccine Act"). Petitioner alleges that as a result of receiving an influenza vaccination on

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

[2] This decision is reissued as a superseding decision pursuant to Vaccine Rule 10(e). A decision denying attorneys' fees and costs was initially issued on February 24, 2022, but was withdrawn by a subsequent order when petitioner filed a motion for reconsideration of that decision on March 4, 2022. (ECF Nos. 32-35.) Although the decision was withdrawn so that petitioner's motion could be considered, petitioner's motion was ultimately denied. (ECF No. 41.) However, once withdrawn, the challenged decision "becomes void for all purposes and the special master must subsequently enter a superseding decision." (Vaccine Rule 10(e)(3)(A).) Accordingly, the order denying reconsideration confirmed that a superseding decision would be issued in the form of a reissuance of the original decision denying attorneys' fees and costs. (ECF No. 41.) Apart from this footnote and the date of issuance, this decision is substantively identical to the prior, now withdrawn, February 24, 2022 decision denying attorneys' fees and costs. Petitioner filed additional documentation on March 4, 2022; however, the order denying petitioner's motion for reconsideration explains why that additional documentation is not considered as part of this superseding decision.

December 6, 2017 and a tetanus, diphtheria, acellular pertussis ("Tdap") vaccination on January 23, 2018, he suffered necrotizing myopathy. (ECF No. 1.) The petition was dismissed on August 16, 2021. (ECF Nos. 25, 27.) On September 2, 2021, petitioner filed the current motion for attorneys' fees and costs. For the reasons discussed below, the motion is denied.

### I.   Procedural History

On August 12, 2020, petitioner filed his medical records and a damages affidavit. (ECF Nos. 6-7.) The case was assigned to my docket on September 4, 2020. (ECF No. 11.) On February 11, 2021, respondent filed his Rule 4(c) report, arguing that the evidence presented did not meet petitioner's burden and recommending against compensation. (ECF No. 16.) On February 16, 2021, I ordered petitioner to file an expert report by April 19, 2021. (NON-PDF Sched. Order (2/16/2021).) Petitioner filed a status report the same day requesting a stay of the expert report deadline in order to file additional medical records. (ECF No. 17.)

Petitioner filed additional medical records on April 21 and June 21, 2021, as well as a statement of completion. (ECF Nos. 19, 22.) On June 25, 2021, I ordered petitioner to file an expert report by August 24, 2021. (NON-PDF Sched. Order (6/25/2021).) On August 12, 2021, petitioner filed a motion for voluntary dismissal "based on the inability to secure a supportive expert report to opine that Petitioner's vaccinations caused Petitioner's necrotizing myopathy." (ECF No. 24, p. 2.) On August 13, 2021, I issued a decision dismissing the case, and judgment entered on August 16, 2021. (ECF Nos. 25, 27.)

On September 2, 2021, petitioner filed this motion for attorneys' fees and costs, requesting $28,236.50 in attorneys' fees and $5,309.03 in costs. (ECF No. 29.) On September 16, 2021, respondent filed an opposition to petitioner's request for fees and costs, alleging that petitioner failed to establish a reasonable basis for his claim. (ECF No. 31.)

### II.   Fact Summary

Prior to vaccination, petitioner's medical history was significant for Thalassemia minor with associated mild anemia, and ADHD unrelated to the condition at issue. (Ex. 4, pp. 51, 81.) Petitioner has no personal history of autoimmune disease, but petitioner's records indicate that he has a "[v]ery strong family history of autoimmune disease on [his] mother's side." (Ex. 4, pp. 6-8.) On June 29, 2017, petitioner presented to Dr. Hassan Jafary for an annual exam. (Ex. 3, pp. 4-7.) At that visit petitioner "did not mention any current health problems other than [a] gluten allergy." (Id. at 5.) Petitioner's medical history was unremarkable, and his physical exam was normal other than a rash and dry skin which he attributed to his gluten allergy. (Id. at 6-7.) Sometime after June 29, 2017, petitioner developed Raynaud's phenomenon.[3] (Ex.

---

[3] "Intermittent bilateral ischemia of the fingers, toes, and sometimes ears and nose, with severe pallor and often paresthesias and pain, usually brought on by cold or emotional stimuli and relieved by heat; it is

4, p. 6 (office visit on 6/29/2018 indicates "recent onset of possible Raynaud's in the last 1 year"); *but see* Ex. 6, p. 4 ("usual state of health until 2/2017 when he developed Raynaud's"); ECF No. 1, p. 2 (allegation of onset of Raynaud's by mid-February 2018); Ex. 2, pp. 4-5 (same).)  Thereafter petitioner began reporting significant fatigue.  (Ex. 6, p. 4 (petitioner "developed prominent fatigue in 7/2017"); *but see* (Ex. 3, pp. 7-9 (office visit 4/23/2018.))

Petitioner received his influenza vaccination on December 6, 2017, and his Tdap vaccination on January 23, 2018.  (Ex. 1, p. 2; Ex. 3, p. 9.)  During the January 23, 2018 visit petitioner's physical exam was normal.  (Ex. 3, p. 8.)  On April 23, 2018, petitioner saw his primary care provider, Hassan Jafary, M.D., at Stanaford Medical Clinic with complaints of fatigue.  (Ex. 3, p. 9.)  Petitioner's laboratory results showed a positive antinuclear antibody and anemia.  (*Id.*)  His exam was normal, and the assessment was unspecified fatigue.  (Ex. 3, p. 10.)

On May 15, 2018, petitioner returned to Dr. Jafary with continued fatigue.  (Ex. 3, p. 11; Ex. 7, pp. 8-9.)  On June 29, 2018, petitioner presented to rheumatologist Hajra Shah, M.D. after Dr. Jafary identified abnormal labs including elevated liver and muscle enzymes and a positive antinuclear antibody.  (Ex. 4, pp. 5-6.)  Petitioner denied any symptoms except for symptoms of Raynaud's phenomenon for the past year and a rash on his neck and ears, which he attributed to a gluten allergy.  (*Id.* at 3, 7-8.)  Petitioner returned to Dr. Shah in July and August 2018, and was ultimately diagnosed with necrotizing myopathy[4], thalassemia, and Raynaud's disease.  (Ex. 4, pp. 51, 55, 80-81.)  Petitioner was admitted to J.W. Ruby Memorial Hospital December 14 through December 17, 2018 where he was treated with intravenous immunoglobulin ("IVIG") for autoimmune myositis.  (Ex. 5, pp. 83-84.)

On July 9, 2019, petitioner saw rheumatologist Christopher Mecoli, M.D., at Johns Hopkins for a second opinion concerning his diagnosis of systemic sclerosis with overlapping necrotizing myopathy.  (Ex. 6, p. 4.)  Dr. Mecoli reviewed the history in

---

usually due an underlying disease or anatomic abnormality. When it is idiopathic or primary it is called Raynaud disease." *Raynaud phenomenon,* DORLAND'S MEDICAL DICTIONARY ONLINE, https://www.dorlandsonline.com/dorland/definition?id=97633 (last visited Jan. 7, 2022). *See also, Raynaud disease,* DORLAND'S MEDICAL DICTIONARY ONLINE, https://www.dorlandsonline.com/dorland/definition?id=70735 (last visited Jan. 7, 2022) ("a primary or idiopathic vascular disorder characterized by bilateral attacks of Raynaud phenomenon").

[4] The Myositis Association provides that necrotizing myopathy is an "idiopathic inflammatory myopathy, or myositis." *Necrotizing Myopathy*, THE MYOSITIS ASSOCIATION, https://www.myositis.org/about-myositis/types-of-myositis/necrotizing-myopathy/ (last accessed Jan. 11, 2022). Patients with necrotizing myopathy may experience symptoms of "weakness in the muscles closest to the center of the body, such as the forearms, thighs, hips, shoulders, neck, and back; difficulty climbing stairs and standing up from a chair; difficulty lifting arms over the head; falling and difficult getting up from a fall; and a general feeling of tiredness." *Id.* The Myositis Association as well as the National Institutes of Health categorize necrotizing myopathy as an immune-mediated condition. *Id; see also*, *Necrotizing Autoimmune Myopathy*, NATIONAL INSTITUTES OF HEALTH – NATIONALS CENTER FOR ADVANCING TRANSLATIONAL SCIENCES – GENETIC AND RARE DISEASES INFORMATION CENTER, https://rarediseases.infonih.gov/diseases/13307/necrotizing-autoimmune-myopathy (last accessed Jan. 11, 2022).

which petitioner said he had been in good health until February 2017 when he developed Raynaud's phenomenon and developed prominent fatigue in July 2017.  (*Id.*)

### III.     Party Positions

In petitioner's motion to dismiss, petitioner's counsel stressed his involvement with a prior case involving the same injury. (ECF No. 24, p. 4 (citing *Marra v. Sec'y of Health & Human Servs.*, 15-261V).) That case resulted in settlement.  In the instant motion, petitioner further contends with respect to the specifics of this case that:

> [o]nce the medical literature was reviewed in detail by Petitioner's counsel in July 2021 and after a phone call with Petitioner's expert in late July, Petitioner's counsel came to the conclusion that this case could no longer be supported through an expert report. At that time, Petitioner's counsel conferred with his client to discuss the developments and steps were taken to voluntarily withdraw the case. At no time did Petitioner's counsel advance this case beyond what would be considered reasonable basis. As soon as it was determined that this case could not proceed, all substantive work on the file ceased except for discussions with Petitioner's counsel's client and performing the necessary steps to withdraw the case.

(ECF No. 29, p. 8.)

In his opposition to petitioner's request for fees and costs, respondent argues that petitioner never presented a medical theory, nor a logical sequence of cause and effect, causally linking his flu or Tdap vaccination to his alleged injuries or conditions. (ECF No. 31, p. 9.)  Furthermore, respondent argues that petitioner's medical records indicate that he has a family history of autoimmune disease, his symptoms of Raynaud's phenomenon presented in February 2017, prior to his flu vaccination, and his symptoms of fatigue predated both vaccinations.  (*Id.*)  Respondent does not challenge the presumption of good faith in this case.  (*Id.* at 4.)

Petitioner did not file a reply to respondent's response.  However, in his petition petitioner alleges that the onset of his Raynaud's phenomenon and symptoms of fatigue began in mid-February 2018.  (ECF No. 1, p. 2.)

### IV.     Legal Standard

Petitioners who are denied compensation for their claims brought under the Vaccine Act may still be awarded attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360–61 (Fed. Cir. 2012). But even when a claim was brought in good faith and has a reasonable basis, the award of attorney's fees and costs remains at the Special Master's discretion.  *See* 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1362.

"Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act.  *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (citing *Chuisano v. United States*, 116 Fed. Cl. 276, 289 (2014)).  Good faith is a subjective inquiry while reasonable basis is an objective inquiry that does not factor subjective views into its consideration.  *See James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1381 (Fed. Cir. 2021) In this case, petitioner's good faith is not challenged, leaving only the question of whether there was a reasonable basis for the filing of the petition.

The evidentiary standard for establishing a reasonable basis as prerequisite to an award of attorneys' fees and costs is lower than the evidentiary standard for being awarded compensation under the Vaccine Act.  To establish a reasonable basis for attorneys' fees, the petitioner need not prove a likelihood of success.  *See Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *6 (Fed. Cl. 2012).  Instead, the special master considers the totality of the circumstances and evaluates objective evidence that, while amounting to less than a preponderance of evidence, constitutes "more than a mere scintilla" of evidence.  *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1344, 1346 (Fed. Cir. 2020); *see also Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 287 (Fed. Cl. 2018).

As discussed most recently in the Federal Circuit's decision in *James-Cornelius*, "more than a mere scintilla" of objective evidence supporting causation can include medical records that provide "only circumstantial evidence of causation." *James-Cornelius*, 984 F.3d at 1379; *see also Cottingham,* 971 F.3d at 1346 (finding that petitioner's medical records showed at minimum circumstantial evidence of causation where medical records showed that petitioner received the Gardasil vaccine and subsequently experienced symptoms identified in the Gardasil package insert as potential adverse reactions of the vaccine).  Nothing in *James-Cornelius* suggests the full extent of what may constitute circumstantial evidence, but the four examples of circumstantial evidence[5]  in *James-Cornelius* provide some guidance regarding the

---

[5] Specifically the Federal Circuit in *James-Cornelius* observed that, although the record evidence lacked an express medical opinion on causation, it still showed circumstantial evidence of causation where 1) petitioner's medicals records contained a doctor's note questioning whether a vaccine adverse event should be reported, 2) the medical course suggested a challenge-rechallenge event of petitioner's symptoms becoming worse after additional injections of the vaccine, 3) medical articles hypothesized that the vaccine can cause the symptoms at issue, and 4) petitioner suffered some of the same symptoms that were listed in the vaccine's package insert as potential adverse reactions of the vaccine). Importantly, the Federal Circuit noted that "rechallenge" has been "recognized as a form of causation evidence." *James-Cornelius*, 984 F.3d at 1380 (citing *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1322 (Fed. Cir. 2006).)  In *Capizzano*, the Federal Circuit explained that "[a] rechallenge event occurs when a patient who had an adverse reaction to a vaccine suffers worsened symptoms after an additional injection of the vaccine. The chief special master stated that this evidence of rechallenge constituted 'such strong proof of causality that it is unnecessary to determine the mechanism of cause—it is understood to be occurring.'" *Capizzano*, 440 F.3d at 1322.  When supported factually, a rechallenge event is therefore unique in presenting a circumstance that does not necessarily need supporting medical opinion to suggest a cause-and-effect relationship.

types of circumstantial evidence that may be considered in determining whether a reasonable basis was established. The Federal Circuit also stressed in *James-Cornelius* that an award of attorneys' fees and costs is within the special master's discretion and remanded the case for further proceedings. 984 F.3d at 1381. Accordingly, it is also not the case that the presence of the specific elements of circumstantial evidence identified in that case necessarily compel a finding that reasonable basis exists.

In any event, it has separately been observed that, although it is a necessary part of the causation inquiry, "[t]emporal proximity is ... not sufficient" by itself to provide reasonable basis for a claim where causation is required to be proven. *Chuisano v. United States*, 116 Fed. Cl. 276, 287 (2014). In contrast, the causal analysis for Vaccine Table claims based solely on temporal proximity suffices "because extensive medical studies have established the requisite connection." *Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108, 110, 115 (2018). For an off-Table case that foundation is not available and observed symptoms may have non-vaccine causes. *See Chuisano*, 116 Fed.Cl. at 286.

In *Bekiaris,* petitioner's counsel "indicated that he had informal or anecdotal evidence based on internet research linking the vaccine to [petitioner's] conditions." 140 Fed. Cl. at 116. However, the Court of Federal Claims noted that petitioner did not provide this evidence to the special master. *Id.* Because the evidence did not appear in the record, the court could not consider whether it would have been sufficient to support a reasonable basis. *Id.* Likewise, in *Chuisano,* the Court faced a similar evidentiary record when it affirmed a denial of fees and costs. 116 Fed.Cl. at 282. The special master noted that petitioner offered only a statement from the decedent's daughter and evidence of temporal proximity, but "pointed to no medical records, nor ... any expert opinion, to support a finding of causation in fact." *Id.* Petitioner tried, unsuccessfully, to obtain favorable expert opinions regarding causation. *Id.* at 282, 291. The court in *Chuisano* agreed with the special master that "[w]ithout supportive evidence of causation-in-fact, petitioner lacked a reasonable basis for her claim." *Id.* at 283.

### V.     Discussion

Petitioner in this case was unable to furnish an expert opinion to support to his claim. (*See* ECF No. 24, p. 2 (petitioner's motion for voluntary dismissal "based on the inability to secure a supportive expert report to opine that Petitioner's vaccinations caused Petitioner's necrotizing myopathy.")) However, absence of an express medical opinion on causation "is not necessarily dispositive of whether a claim has a reasonable basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts." *James-Cornelius,* 984 F.3d at 1379; (citing *Cottingham*, 971 F.3d at 1346 (explaining that medical records paired with the vaccine's package insert constituted objective medical evidence that may support finding a reasonable basis of causation). Instead, petitioner here seems to rely on a purported temporal relationship between petitioner's vaccinations and injury as well as a history of

settlement of cases involving the same vaccination and injury.  This is not persuasive in the context of this case.

Petitioner's medical records indicate that he received his influenza vaccination on December 6, 2017, and his Tdap vaccination on January 23, 2018.  (Ex. 1, p. 2; Ex. 3, p. 9.)  Petitioner alleges in his petition that the onset of his Raynaud's phenomenon and symptoms of fatigue began in mid-February 2018, after both vaccinations.  (ECF No. 1, p. 2.)  Citing only his own affidavit, petitioner also suggested in his motion to dismiss that his symptoms of numbness, muscle aches, aching, cold sensations, and abnormal fatigue began by mid-February 2018.  (ECF No.1, p. 2; ECF No. 24, p. 4.)  However, there is conflicting evidence in the medical records regarding onset of the relevant symptoms.  While petitioner notes that medical encounters of June 29, 2017, and January 23, 2018, included no report of either muscle weakness, myalgia, or fatigue (ECF No. 4 (citing Ex. 3, pp. 6-8)), respondent stresses that petitioner's visit with Dr. Mecoli on July 9, 2019, indicates that petitioner was "in his usual state of health until 2/2017 when he developed Raynaud's" and "subsequently developed prominent fatigue in 7/2017" (ECF No. 16 (citing Ex. 6, p. 4)).  Petitioner's first complaint of fatigue to Dr. Jafary appears in an office visit from April 23, 2018.  (Ex. 3, pp. 9-10; *see also* ECF No. 16, p. 2; ECF No. 24, p. 5.)

Despite this possible temporality, none of petitioner's treating physicians considered a causal relationship between petitioner's vaccinations and his subsequent necrotizing myopathy.  After petitioner's influenza vaccination on December 6, 2017, petitioner presented for two wellness visits.  (Ex. 3, pp. 6-9.)  The only mention of petitioner's vaccinations indicates that petitioner was due for Tdap and flu vaccinations.  (*Id.* at 7, 9.)  Thereafter petitioner returned to Dr. Jafary complaining of fatigue in April and May 2018 and again in May, November, and December 2019.  (Ex. 3, pp. 9-18.)  None of these records discuss petitioner's vaccinations.  (*See id.*)  Petitioner presented for a second opinion to Dr. Shah given his abnormal labs in June 2018; and then returned in July, August, and December 2018 and March 2019.  (Ex. 4, pp. 6-126.)  Specifically, the records from July and August 2018 indicate that petitioner was diagnosed with necrotizing myopathy, thalassemia, and Raynaud's disease.  (Ex. 4, pp. 52, 55, 74, 81.)  Again, none of these records discuss petitioner's influenza or Tdap vaccination as a cause of his symptoms.  (*See id.*)

Even after petitioner began treatment for what was considered an autoimmune condition, his vaccinations still were not raised as a causal factor.  Petitioner was admitted to J.W. Ruby Memorial Hospital December 14 through December 17, 2018 where he was treated with IVIG for autoimmune myositis.  (Ex. 5, pp. 83-84.)  These records indicate that petitioner has "MCTD [mixed connective tissue disease] he noticed fatigue three months ago which has been increasing…he denies having any actual weakness."  (Ex. 5, p. 189.)  Petitioner's records from this admission do not discuss his influenza and/or Tdap vaccination.  (*See id.*)  On July 9 ,2019, petitioner saw Dr. Mecoli at Johns Hopkins for a second opinion concerning his diagnosis of systemic sclerosis with overlapping necrotizing myopathy.  (Ex. 6, p. 4.)  Dr. Mecoli observed that petitioner did not fit the diagnostic criteria, though he opined that petitioner had

7

symptoms "consistent with idiopathic inflammatory myopathy (immune-mediated necrotizing myopathy) with systemic sclerosis features." (*Id.* at 8.) Dr. Mecoli indicated that he wished to perform additional tests to confirm the presence of autoantibodies.[6] (*Id.*) However, Dr. Mecoli did not discuss petitioner's vaccinations or indicate whether the vaccinations could have caused his necrotizing myopathy. (*Id.*)

Petitioner nonetheless suggests that the medical records in the instant case "reasonably demonstrated a causal link" between petitioner's vaccinations and his necrotizing myopathy. (ECF No. 24, p. 4.) However, petitioner indicated in his motion for voluntary dismissal that petitioner's counsel "and his expert reviewed the issues at great length, which included many discussions and a detailed search and review of the available medical literature." (ECF No. 24, p. 7.) Petitioner stated that "[w]hile there is ample literature that discusses influenza vaccines and necrotizing myopathy, Petitioner's expert [w]as unable to causally relate the facts of this case to the medical literature." (*Id.*) Petitioner further states that "[i]t was not until end of July 2021 that Petitioner's counsel reached the unfortunate conclusion that this case could not move forward" and "[a]s a result the instant Motion for Voluntary Dismissal was filed[.]" (ECF No. 24, p. 7.)

It is true, as petitioner seems to suggest, that reasonable basis may exist at the time a claim is filed but dissipate as the case progresses, at which point petitioner and counsel have an obligation to discontinue a claim once they know or should know it cannot be proven. *Cottingham,* 134 Fed.Cl. at 574 (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376 (Fed. Cir. 1994); *Curran v. Sec'y of Health & Human Servs.*, 130 Fed.Cl. 1, 5-6 (2017). However, counsel's subjective realization that the case cannot move forward is not the relevant factor in such an analysis. *Simmons v. Sec'y of Health & Human Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017) (explaining that whether there is a reasonable basis 'for the claim' is an objective inquiry unrelated to counsel's conduct). Petitioner's counsel represents that it was not general causation, but rather specific causation based on the facts of this case, that left petitioner's expert unable to opine. Although petitioner did file updated medical records after the case was initially filed, petitioner's counsel has not represented that it was these records that revealed whatever facts proved fatal to petitioner's claim. In fact, petitioner's counsel has not disclosed what facts prevented petitioner's expert from opining and nothing in any of petitioner's filings suggests that the critical facts were unknown at the time the petition was filed.

Petitioner's counsel also emphasizes that he "previously handled and settled a necrotizing myopathy case in 2018" (ECF No. 24, p. 4 (citation omitted).) And, indeed, cases involving necrotizing myopathy following influenza vaccination have previously been filed in the Program, indicating that petitioner's theory of causation may not be a novel one. *See Dilsaver v. Sec'y of Health & Human Servs.,* No. 16-716V, 2020 WL

---

[6] An antibody profile dated 8/30/2019 showed that petitioner was "negative for the antibodies on the comprehensive myositis profile" and further tests "showed a strong unidentified band suggesting the presence of an unidentified autoantibody. Several weaker, unidentified bands were also visible." (Ex. 6, p. 12.)

1027954 (Fed. Cl. Spec. Mstr. Feb. 18, 2020); *DaSilva v. Sec'y of Health & Human Servs.,* 2019 WL 7372729 (Fed. Cl. Spec. Mstr. Dec. 10, 2019); *Bartkus v. Sec'y of Health & Human Servs.*, No. 15-261, 2019 WL 2067278 (Fed. Cl. Spec. Mstr. Apr. 19, 2019); *Vickers v. Sec'y of Health & Human Servs.*, 2016 WL 7011358 (Fed. Cl. Spec. Mstr. Nov. 15, 2016); *Colvis v. Sec'y of Health & Human Servs.,* 2015 WL 550931 (Fed. Cl. Spec. Mstr. Jan. 14, 2015). However, compensation in these cases was awarded on the basis of jointly filed stipulations, meaning that the existence of a causal relationship between vaccination and injury remained contested and the resulting decisions did not address the causal relationship or describe any factors considered by experts or included in relevant medical literature. *Contra Thomas on behalf of Z.T. v. Sec'y of Health & Human Servs.*, No. 20-886V, 2021 WL 2389837, *9 (Fed. Cl. Spec. Mstr. May 17, 2021) (explaining that "prior decisions have addressed the alleged causal relationship [of autonomic dysfunction following HPV vaccine] with the benefit of complete expert presentations, lending further clarity to the reasonable basis analysis in this case.") Therefore, without more, these settlements do not supply significant information regarding the proposed causal relationship. *Bekairis*, 140 Fed.Cl. at *116 (rejecting reliance on counsel's anecdotal experience).

It is possible for a history of settlement to have some significance in itself. *Austin v. Secretary of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) (observing that "[c]aselaw may also provide some guidance on the merits of a potential claim. The fact that special masters have found in favor of vaccine causation in similar cases or a history of settlements in particular types of cases may provide a reasonable basis for filing a claim, even in the absence of a medical opinion or medical records supportive of vaccine causation.") However, the fact that other cases involving the same injury have previously settled cannot suffice to demonstrate more than a mere scintilla of evidence of causation where the specific facts of this case have evidently been fatal to any proposed medical opinion supporting causation. It is not necessarily unusual for a petition to lack a reasonable basis due to issues affecting specific causation even where general causation is assured (*e.g.*, the fact that it is well accepted that the flu vaccine can cause Guillain-Barre syndrome does not mean that every petition alleging Guillain-Barre syndrome will have a reasonable basis based on its facts).

In sum, petitioner has offered medical records with some conflicting evidence suggestive of a *possible* temporal relationship between onset of his symptoms and vaccinations. However, no medical opinion is available within the medical records to endorse any causal significance to that purported temporal relationship based on the available facts. He has also cited other cases in the Program demonstrating a settlement history among cases involving the same injury and vaccine(s). However, this speaks to general causation only while petitioner acknowledges specific causation to be the issue that led to dismissal. In addition to the lack of treating physician support, petitioner also acknowledges that a retained expert was unable to draw any causal connection based on a review of the facts of this specific case. Based on all of the above, there is not more than a mere scintilla of evidence supporting vaccine causation on this record.

## VI.    Conclusion

Accordingly, I find that petitioner has not demonstrated that he had a reasonable basis to file this petition. In light of all of the above, petitioner's motion for attorneys' fees and costs is **DENIED** and no award for attorneys' fees and costs is made. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court is directed to enter judgment herewith.[7]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.